**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Kacie Crowe,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.:** 4:26-cv-9371<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff, Kacie Crowe, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchaser of a new 2023 GMC Yukon Denali vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. The subject vehicle is equipped with Defendant's 6.2L V-8 "L87" engine, one of approximately 597,630 engines that Defendant recalled because they contain manufacturing defects that cause the engines to sustain internal damage, fail, and lose propulsion without warning. Plaintiff seeks damages related to her vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had she been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship between the parties and the amount in

controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of the State of Texas. Defendant General Motors LLC is a citizen of the State of Delaware and the State of Michigan. The amount in controversy exceeds $75,000.00 because Plaintiff seeks, among other relief, revocation of acceptance of and a refund of the purchase price of a vehicle for which she paid $84,375.00, exclusive of options, fees, taxes, and finance charges.

4. This Court also has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

5. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

7. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

## PARTIES

8. Plaintiff Kacie Crowe was, at all relevant times, an adult individual who is domiciled in Austin, Hays County, Texas, and who intends to remain there, and who purchased the subject vehicle in Houston, Harris County, Texas, which was manufactured or sold by Defendant. Plaintiff is a citizen of Texas.

9. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit,

Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Texas and throughout the United States. Defendant GM is a Delaware limited liability company. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. GM is a citizen of Delaware and Michigan for diversity purposes.

## FACTUAL ALLEGATIONS

10. On May 18, 2023, Plaintiff purchased a new 2023 GMC Yukon Denali equipped with the L87 6.2L V-8 engine, Vehicle Identification Number 1GKS1DKL4PR366543 (hereafter the "Vehicle") from Sterling McCall Buick GMC, an authorized GM dealership located at 10422 Southwest Freeway, Building D, Houston, Texas (hereinafter "Sterling McCall"), for personal, family, or household use.

11. The purchase price of the Vehicle was $84,375.00, excluding options, fees, taxes, and finance charges.

12. At the time of delivery, the Vehicle's odometer read 5 miles.

13. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

14. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to the consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's

engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to the consumer.

15. On May 18, 2023, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle.

16. Defendant designates the Vehicle's 6.2L V-8 engine by its Regular Production Option code L87 (hereafter the "L87 engine").

17. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration, assigned NHTSA Recall No. 25V-274 and Defendant's own recall number N252494000, covering approximately 597,630 model year 2021 through 2024 vehicles equipped with the L87 engine, including 2023 GMC Yukon vehicles such as the Vehicle.

18. In that report, Defendant disclosed that the engines in the recalled vehicles "may have manufacturing defects that can lead to engine damage and engine failure," and identified two root causes: rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

19. Defendant further disclosed that the suspect engine build period ran from March 1, 2021, through May 31, 2024, and that between April 29, 2021, and February 3, 2025, Defendant had received 28,102 field complaints concerning the L87 engine, of which 14,332 involved a loss of propulsion. Upon information and belief, the Vehicle's engine was manufactured within that suspect build period.

20. Defendant thus began receiving field complaints of L87 engine failures on or about April 29, 2021 - more than two years before it sold the Vehicle to Plaintiff - and

Defendant opened and closed an internal investigation into those failures in February 2022, approximately fifteen months before the sale.

21. Defendant therefore knew, before it sold the Vehicle to Plaintiff on May 18, 2023, that the L87 engine was prone to bearing damage, catastrophic internal engine damage, and sudden loss of propulsion.

22. Notwithstanding that knowledge, Defendant did not disclose the L87 engine defect to Plaintiff at or before the time Plaintiff purchased the Vehicle.

23. In connection with the recall, Defendant also issued Special Coverage Adjustment N252494003, by which Defendant undertook to repair or replace the L87 engine, without charge to the owner, for a period of ten (10) years or 150,000 miles from the vehicle's original in-service date, whichever occurred first. That special coverage applies to the Vehicle and constitutes a written warranty running from Defendant to Plaintiff.

24. Since the time of Vehicle delivery to the present, the Vehicle has been out of service at least seventy-eight (78) days because of the catastrophic engine failure and other defects.

25. On February 14, 2025, Plaintiff presented the Vehicle to Chevrolet of West, an authorized GM dealership located at 225 T M West Parkway, West, Texas (hereinafter "Chevrolet of West"), and complained that the Vehicle's engine would not start.

26. At the time the Vehicle's odometer read 28,549 miles.

27. The Vehicle was inoperable and had to be towed to the dealership.

28. Chevrolet of West found that camshaft and crankshaft correlation diagnostic trouble codes were active, took an oil sample and found metal debris in the Vehicle's oil,

removed the oil pan and found that the number one main cap bearing had spun and was discolored, and diagnosed catastrophic engine failure.

29. Chevrolet of West attempted a repair by replacing the Vehicle's engine assembly, oil cooler lines, radiator, intake manifold, and water pump. Chevrolet of West also tested the Vehicle's battery, found that it had thirteen (13) cold cranking amps, and replaced the battery.

30. Upon information and belief, the failure of the Vehicle's engine was caused by the same L87 engine defect that Defendant reported to the National Highway Traffic Safety Administration – rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

31. The Vehicle's engine failed at 28,549 miles, well within both the 5-year / 60,000-mile powertrain coverage of Defendant's New Vehicle Limited Warranty and the ten-year / 150,000-mile term of Special Coverage Adjustment N252494003. Defendant paid for the engine replacement and the related repairs as warranty work, and thereby acknowledged that the failure was covered by its written warranty.

32. The Vehicle's engine failed on or about February 14, 2025, approximately two months before Defendant disclosed the L87 engine defect to the National Highway Traffic Safety Administration and to the public on April 24, 2025. At the time of the failure, Defendant was still concealing the defect.

33. The repair took more than two and a half months to complete because the replacement engine, water pump and related gaskets were on backorder from Defendant.

34. By letter dated April 23, 2025, while the Vehicle remained at Chevrolet of West awaiting the backordered parts, Plaintiff notified Defendant in writing that the Vehicle had by then been out of service for seventy-five (75) days, that neither Defendant nor the dealership had provided her with a comparable or loaner vehicle, and that she had been paying out of pocket for a third-party rental vehicle. Plaintiff requested a final repair attempt and advised Defendant that she was seeking relief under the Texas Lemon Law.

35. At no point during the seventy-six (76) days that the Vehicle was out of service did Defendant or its authorized dealership provide Plaintiff with a comparable or loaner vehicle, and Plaintiff incurred out-of-pocket rental expenses as a result.

36. During this visit, the Vehicle was out of service for seventy-six (76) days, and ready for pick up on May 1, 2025.

37. Upon information and belief, the replacement engine that Defendant's authorized dealership installed in the Vehicle is itself a 6.2L V-8 L87 engine that was manufactured within, or built to the same specifications as engines manufactured within, the March 1, 2021 through May 31, 2024 suspect build period that Defendant reported to the National Highway Traffic Safety Administration, and therefore carries the same manufacturing defects.

38. On September 23, 2025, Plaintiff presented the Vehicle to Covert Cadillac, an authorized GM dealership located at 11750 Research Boulevard, Austin, Texas (hereinafter "Covert Cadillac"), for Defendant's L87 engine loss of propulsion safety recall, Defendant's recall number N252494000, which advised that "the connecting rod and/or crankshaft engine components" in the recalled vehicles "may have manufacturing defects that can lead to engine

damage and engine failure," and that if the engine fails during vehicle operation the vehicle "will lose propulsion."

39. At the time the Vehicle's odometer read 31,158 miles.

40. Covert Cadillac performed the inspection that Defendant prescribed as the recall remedy. During the same visit, Covert Cadillac also reprogrammed the Vehicle's engine control module under Defendant's field action N252510320, which adds to the existing check engine light a Driver Information Center warning message displayed when the corresponding diagnostic trouble code sets.

41. Defendant's own recall remedy was thus performed on the replacement engine, which Defendant treated as falling within the population of L87 engines covered by recall N252494000.

42. Defendant's remedy for the L87 engine defect consisted of an inspection only. Defendant did not replace the Vehicle's engine or otherwise correct the manufacturing defects that Defendant had reported, and the Vehicle remains equipped with an engine subject to the same defect.

43. During this visit, the Vehicle was out of service for two (2) days, and ready for pick up on September 24, 2025.

44. Notwithstanding the replacement of the Vehicle's engine and the inspection performed under Defendant's recall, Plaintiff continues to experience engine trouble with the Vehicle.

45. A vehicle whose engine can sustain catastrophic internal damage, seize, and lose propulsion without warning while being driven at highway speed presents an unreasonable risk to the safety of Plaintiff, her passengers, and the motoring public.

46. As a result of the L87 engine defect, the catastrophic engine failure, and the replacement of the Vehicle's engine, the Vehicle is worth substantially less than a comparable vehicle without such repair history, and Plaintiff has suffered a diminution in the value of the Vehicle.

47. Had Plaintiff known of the L87 engine defect at the time of purchase, she would not have purchased the Vehicle, or would have paid substantially less for it.

48. By U.S. First Class Mail dated June 19, 2026, Plaintiff notified Defendant of the above-mentioned nonconformities with the Vehicle and Defendant's failure to conform the Vehicle to the terms of Defendant's express warranty within a reasonable period of time. Within the same letter, Plaintiff revoked her acceptance of the Vehicle.

49. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

50. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

51. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

## FIRST CAUSE OF ACTION
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

52. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

54. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

55. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

56. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

57. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

58. Defendant has failed to remedy the subject vehicle's engine defect within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

59. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Tex. Bus. & Com. Code § 2.314, *et seq.***

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Defendant is a merchant with respect to motor vehicles.

62. The Vehicle was subject to the implied warranty of merchantability, as defined in Tex. Bus. & Com. Code § 2.314, *et seq.*, running from the Defendant to the Plaintiff.

63. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

64. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

65. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

66. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

**<u>THIRD CAUSE OF ACTION</u>**
**Breach of Express Warranty, Tex. Bus. & Com. Code § 2.313**

67. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

68. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, and subsequently issued Special Coverage Adjustment N252494003, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

69. Plaintiff relied on Defendant's warranty when she agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

70. Plaintiff submitted her Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the dangerous engine defect under the Vehicle's warranty as described herein within a reasonable period of time.

71. Plaintiff has given Defendant reasonable time to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

72. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

73. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

74. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had she known, prior to the time of purchase, that the subject vehicle contained a defective engine.

75. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of her vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

## FOURTH CAUSE OF ACTION
**Revocation of Acceptance, Tex. Bus. & Com. Code § 2.608**

76. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

78. After a lengthy opportunity provided to Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

79. The defects substantially impair the value of the Vehicle to the Plaintiff.

80. By a letter dated June 19, 2026, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

81. Defendant has nevertheless failed to make a good-faith response to this demand within thirty (30) days of its receipt.

82. As a result of Defendant's conduct the Plaintiff has been damaged.

**<u>FIFTH CAUSE OF ACTION</u>**
**Breach of Deceptive Trade Practices Act,**
**Tex. Bus. & Com. Code § 17.41, *et seq.***

83. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

84. Plaintiff is a "consumer" under Tex. Bus. & Com. Code § 17.45(4) because she sought or acquired her vehicle by purchase.

85. Plaintiff's vehicle is "goods" under Tex. Bus. & Com. Code § 17.45(1) because it is a tangible chattel that was purchased or leased for use.

86. Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a limited liability company.

87. At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

88. Texas's Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*, prohibits and declares unlawful false, misleading, or deceptive business practices in the conduct of any trade or commerce.

89. The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*

90. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the subject vehicles, including the Plaintiff's vehicle, equipped with the 6.2L V-8 L87 engine are defective. The existence of the defect, which manifests in

all or substantially all of the vehicles equipped with the 6.2L V-8 L87 engine, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, requires expensive and inconvenient maintenance efforts, and causes the subject vehicles to be worth substantially less than they would otherwise be valued. Defendant's failure to disclose these defects and their ramifications offends public policy and is unethical, unscrupulous, and substantially injurious to consumers.

91. Accordingly, Defendant violated the DTPA, as it represented that subject vehicles had characteristics and benefits that they do not have, represented that subject vehicles were of a particular standard, quality, or grade when they were of another, and advertised subject vehicles with the intent not to sell or lease them as advertised.

92. In addition, Tex. Bus. & Com. Code § 17.50(a)(2) provides that a "consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . (2) breach of an express or implied warranty." Defendant additionally violated the DTPA by breaching its express and implied warranties.

93. Defendant's failure to disclose the subject vehicle defects and its breach of the express warranty and implied warranty of merchantability set forth above was a producing cause of economic damages sustained by Plaintiff.

94. As a result of Defendant's acts, Plaintiff has suffered damages in that she is left with a vehicle of diminished value and utility because of its defects, which continues to pose a serious safety risk.

95. Plaintiff is a reasonable consumer who does not expect that her vehicle will suffer from the above-described defects, which is the reasonable and objective consumer expectation for vehicles.

96. As a result of Defendant's misconduct, Plaintiff has been harmed and has suffered actual and economic damages in that her vehicle is defective and requires repairs or replacement and is worth less money.

97. Plaintiff provided adequate written pre-suit notice to Defendant more than sixty (60) days before the filing of this action, in accordance with Tex. Bus. & Com. Code § 17.505(a).

98. Defendant violated the law willfully and knowingly.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;
b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;
c. Incidental and consequential damages;
d. Punitive damages;
e. Reasonable attorney's fees;
f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 23, 2026

By: /s/ Jody Burton

Jody Burton, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250

Facsimile: (203) 653-3424
*Attorneys for Plaintiff*